IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────

NICOLET LAW OFFICE S.C.,

        Plaintiff,                     OPINION AND ORDER

  v.

                                      22-cv-654-slc

BYE, GOFF & ROHDE, LTD. and
SAINT PAUL AGENCY, LLC,

        Defendants.
───────────────────────────────────────────────────────────

In this civil action for damages and injunctive relief, plaintiff Nicolet Law Office S.C. alleges that defendant Bye, Goff & Rohde, Ltd. ("BGR") and its advertising agent, Saint Paul Agency, LLC, violated the Lanham Act and Wisconsin law when it copied Nicolet's mark into the headlines of Google Ads promoting BGR's legal services. Before the court is defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). In the alternative, defendants ask this court to transfer this case to the District of Minnesota, pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the court will deny both motions.

In ruling on the motion to dismiss, I must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In doing so, I find the complaint fairly alleges the following:

## ALLEGATIONS OF THE COMPLAINT

Nicolet and BGR are personal injury law firms who serve clients in Wisconsin and Minnesota. They compete directly against each other to attract and retain clients seeking personal injury lawyers. Nicolet's principal place of business is in Hudson, Wisconsin. It has 14 office locations throughout Wisconsin and Minnesota. BGR's principal location is in River Falls, Wisconsin. It has three office locations in Wisconsin. Defendant Saint Paul is a Minnesota advertising agency, with its principal place of business located in St. Paul, Minnesota.

Nicolet has been using the trademark NICOLET LAW in interstate commerce in association with legal services since at least April 2007. It is the owner of Wisconsin Trademark Registration No. 20220086677 for the mark NICOLET LAW. On March 22, 2022, it applied for a trademark for the mark NICOLET LAW from the United States Patent Office. Nicolet uses the mark NICOLET LAW extensively to market its legal services in digital, print, television and billboard advertisements throughout Wisconsin and Minnesota.

Sometime before March 2022, BGR retained Saint Paul to develop a Google Ads campaign to market BGR's legal services on the internet. Defendants' Google Ads campaign consisted of (1) purchasing keywords that would result in BGR's sponsored advertisements appearing at the top of certain search results (*e.g.* purchasing "Nicolet" so that any search of the word Nicolet would cause BGR's sponsored ad to appear at the top of the corresponding results page); and (2) creating sponsored advertisements that would attract "clicks" from persons searching for legal services. BGR and Saint Paul intended the digital campaign to draw

traffic to BGR's website, thereby increasing the number of clients who would retain BGR to prosecute their personal injury claims.

The sponsored ad is the component of the campaign viewable to the public. A key part of the sponsored ad is the headline, which is the text of the hyperlink that, once clicked, takes the user away from the Google results and directly to BGR's website. Saint Paul and BGR were able to customize the text of the headline to state whatever they wanted. When developing its sponsored advertisements for BGR, Saint Paul intentionally chose to use the term "NICOLET LAW" in multiple headlines. These ads, which first appeared on the internet on or around March 7, 2022, appeared as follows:

Ad · https://www.byegoff.com/   ⋮   (800) 607-3030
**Nicolet law - Serving Wisconsin & Minnesota**
For 40+ Years We Have Been Representing Individuals Throughout Minnesota and Wisconsin. Call Bye, Goff & Rohde Personal injury Attorneys Serving Wisconsin & Minnesota. Board Certified Partners. No Fees Unless We Win. Licensed In WI & MN.
See Our Practice Areas · Past Case Results · Meet The Team · Email or Call Us Today
■ 258 Riverside Dr, River Falls, WI - Open today · Open 24 hours ▾

Ad · https://www.byegoff.com/
**PI Attorneys - Nicolet law**
For 40+ Years We Have Been Representing Individuals Throughout Minnesota and Wisconsin. Our Litigation Attorneys & Staff Have Just One Goal; To Relentlessly...

Ad · https://www.byegoff.com/   ⋮   (800) 607-3030
**Bye | Goff | Rohde - Nicolet law hudson**
Our Practice Area is Personal Injury Cases. Call Today to Get the Help You Deserve. Call Bye, Goff & Rohde Personal injury Attorneys Serving Wisconsin & Minnesota. Board Certified Partners. No Fees Unless We Win. Licensed In WI & MN. 24/7 customer service.
See Our Practice Areas · Past Case Results · Meet The Team · Email or Call Us Today
■ 258 Riverside Dr, River Falls, WI - Open today · Open 24 hours ▾

Consequently, if a prospective client typed "Nicolet Law" into Google's search engine to find Nicolet's website or contact information, the results would display BGR's sponsored ad at the top of the list incorporating "Nicolet Law" into the headline. An unsuspecting client could click the link containing "Nicolet Law" reasonably expecting to be taken to Nicolet's website, only to be taken to BGR's website. In addition, or alternatively, the unsuspecting client might believe that there was some affiliation between Nicolet and BGR.

Upon discovering BGR's Google ads, Nicolet demanded that BGR immediately amend its online sponsored ads to remove any reference to Nicolet in those ads; BGR responded that it would do so. But on or about August 10, 2022, Nicolet discovered that BGR's Google ads once again referenced "Nicolet Law" in the headlines. This lawsuit followed.

## I. MOTION TO DIMISS

A motion to dismiss pursuant to Rule 12(b)(6) tests the complaint's legal sufficiency; it is not an opportunity for the court to find facts or weigh evidence. To state a claim upon which relief may be granted, a complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"

. . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

### A. Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

In its first claim, Nicolet alleges that BGR and Saint Paul violated Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)) by using the mark NICOLET LAW in their advertising campaigns. Section 43(a)(1)(A) of the Lanham Act imposes civil liability on any person who, in connection with any goods or services, uses any word, term, or name that:

> [Is] likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

15 U.S.C. § 1125(a)(1)(A).

To succeed on its unfair competition claim under 15 U.S.C. § 1125(a)(1)(A), Nicolet must establish two things: (1) that its mark is protectable; and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 & n. 8 (7th Cir. 2001). Defendants argue that Nicolet's complaint fails to plausibly allege facts showing that it can satisfy either of these elements.

#### 1. Protectability

With respect to this element, the law recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *Packman*, 267 F.3d at 638. Marks in the top three categories — suggestive, arbitrary, and

5

fanciful — are inherently distinctive and require no showing to be protected. *Bishop Bay Founders Group, Inc. v. Bishops Bay Apartments, LLC*, 301 F. Supp. 2d 901, 906 (W.D. Wis. 2003). Generic marks, at the lowest end of the protectability spectrum, can never function as a trademark. Finally, a mark deemed descriptive, generally describes the "ingredients, qualities, or characteristics of an article or trade or a service." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). The parties agree that plaintiff's purported mark, NICOLET LAW, is at best a descriptive mark.

For a descriptive mark to be entitled to protection, the plaintiff must show either that (a) the mark is registered with the USPTO, which provides prima facie evidence of validity, ownership and exclusive right to use the registered mark, or (b) the mark is unregistered, but secondary meaning has been established in its claimed mark. *Packman*, 267 F.3d at 638. It is undisputed that NICOLET LAW was not and still is not registered with the USPTO.[1] So Nicolet must show that the mark has acquired secondary meaning. Secondary meaning refers to the "mental association in the buyers' minds between the alleged mark and a single source of the product" and "[a] mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Id.*, 267 F.3d at

---

[1] As alleged in the complaint, on March 22, 2022, plaintiff applied for a trademark for the mark NICOLET LAW from the United States Patent Office. While this dismissal motion was pending, on January 13, 2023, the USPTO made a preliminary finding that the primary significance of the mark was as a surname and therefore the mark was not protectible under 15 U.S.C. § 1052(e)(4). Dkt. 15-1. However, this is not a final determination: the USPTO invited Nicolet to submit evidence of acquired distinctiveness, including evidence that Nicolet's mark "has been in substantially exclusive and continuous use with the identified goods or services for at least five years before the date on which the claim of distinctiveness is made." Dkt. 15-1, at 5.

641. To determine whether a mark has secondary meaning, the court may consider: (1) the amount and manner of advertising; (2) sales volumes; (3) length and manner of use; (4) consumer testimony; and (5) consumer surveys. *Platinum Home*, 149 F.3d at 728.

The existence of secondary meaning is a fact-specific inquiry, which generally means that it cannot be decided on a motion to dismiss. *See Wolf Appliance, Inc. v. Viking Range Corp.*, 686 F. Supp. 2d 878, 887 (W.D. Wis. 2010); *Dean v. Cortes*, No. 2:18-cv-02335, 2018 WL 3425016, at *6 (C.D. Cal. July 12, 2018) ("[C]ourts have determined that secondary meaning need only be pled generally for purposes of defeating a motion to dismiss."); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015) ("[T]he question of whether a descriptive mark has acquired the secondary meaning necessary to be distinctive generally should not—and here cannot—be resolved on a motion to dismiss."). Nevertheless, BGR argues that dismissal is appropriate here because Nicolet's complaint lacks specific factual allegations plausibly showing that NICOLET LAW has acquired secondary meaning such that it is a protectable trademark.

I disagree. Nicolet has alleged that it has used NICOLET LAW for more than 15 years, that it has common law trademark rights in that mark beginning that date, that it has used the mark extensively in its marketing and advertising efforts to leverage its goodwill and reputation for aggressive and effective legal representation, and that it has spent substantial time and expense to promote the mark in connection with marketing and advertising its legal services. Complaint, dkt. 1, at ¶¶ 13-16. Although on the conclusory side, these allegations are sufficiently specific to give "fair notice of what the . . . claim is and the grounds upon which it

rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555). The allegations are sufficient to plead a plausible link in the mind of consumers between Nicolet's mark and its source, which is enough to raise the possibility of relief above the "speculative level," assuming they are true. *Twombly*, 550 U.S. at 555. To the extent defendants argue that these allegations are insufficient to establish protectability, their argument is premature and more appropriate to a motion for summary judgment.

### 2. Likelihood of Consumer Confusion

The Seventh Circuit has identified seven factors that inform the court's "likelihood of confusion" analysis:

> (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another.

*Packman*, 267 F.3d at 643.

Courts balance the seven factors: "[n]o single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 678 (7th Cir. 2001).

"Whether a plaintiff has demonstrated a likelihood of confusion is ultimately a question of law, but the likelihood of confusion factors present questions of fact." *My Health, Inc. v. Gen. Elec. Co.*, No. 15-CV-80-JDP, 2015 WL 9474293, at *5 (W.D. Wis. Dec. 28, 2015)(citations omitted). Like protectability, the likelihood of confusion test is a fact-intensive

analysis and generally not one decided on a motion to dismiss. *Id*. "The court's role when evaluating a Rule 12(b)(6) motion to dismiss is to determine whether [plaintiff] has pled facts sufficient to notify [defendant] of its claims and to plausibly allege likelihood of confusion; the court will not weigh facts." *Id*.

The complaint alleges the following facts in support of "likelihood of confusion:" BGR and Nicolet provide similar legal services in a similar geographic area, Dkt. 1, ¶ 43; potential consumers of legal services using Google to search for law firms generally do not exercise a high degree of care when scrutinizing their search results, making it easy for consumers to be duped into clicking on a headline with the phrase "Nicolet law" believing the targeted website is actually affiliated with Nicolet, *id*., ¶ 43; Google has conducted internal studies suggesting there is significant confusion among people using online search engines when, like here, trademarks are included in the title or body of the advertisements, *id*., ¶ 30; Google restricts the use of trademarks in the text of sponsored activities, likely to reduce confusion, *id*.; the deceptive component of the advertisement is in the headline, which is the component intended to seize a consumer's attention and entice a click by that consumer, *id.*, ¶ 44; defendants' advertising campaigns likely deceived consumers performing a Google search for "Nicolet Law" and clicking a hyperlink containing the phrase "Nicolet Law" into believing they are accessing Nicolet's website, when in reality the website belonged to BGR, *id*., ¶ 42; at a minimum, defendants' advertisements were likely to deceive and confuse potential clients about the sponsor of the website they were about to access and the existence of an affiliation between BGR and Nicolet that did not actually exist, *id.*, ¶ 29.

These allegations, when assumed to be true and construed in Nicolet's favor, suffice to place defendants on notice of the claims against it and to plausibly allege that BGR's use of NICOLET LAW in multiple headlines of its ads was likely to cause confusion among consumers, to Nicolet's detriment.

Defendants insist that this court should dismiss Nicolet's complaint because there is no evidence that any consumers were actually confused. It asserts that the offending ads were online for at most two days, during which there were no more than six "click-throughs" by only three unique users, one of whom had to be Nicolet discovering the Google Ads and the second of whom had to be Nicolet's counsel conducting a good faith investigation of the claims. Dkt. 13, at 13. Even if the sole remaining user might have been confused, argue defendants, *de minimus* incidents of actual confusion are insufficient. *Id*.

Defendants' arguments may well carry the day on summary judgment, but they are inappropriate at the motion to dismiss stage. For one thing, there is a factual dispute whether defendants actually halted the ad campaign on March 16, 2022; Nicolet alleges that the offending ads reappeared in August 2022. Second, as defendants acknowledge, Nicolet "is not required to demonstrate instances of actual confusion to establish a likelihood of confusion[.]" Dkt. 6, at 20. Defendants' remaining arguments about likelihood of confusion similarly are attempts to argue the underlying merits of Nicolet's case, not whether the complaint

adequately states a claim. Like its arguments about protectability, such arguments are premature.[2] They fail to establish that Nicolet's trademark claims should be dismissed.[3]

### B. Deceptive Advertising Under Wis. Stat. § 100.18

Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18, "generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (quoting *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis.2d 146, 677 N.W.2d 233, 244 (2004)). The parties agree that, to prove a claim under this statutory provision, Nicolet must demonstrate "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Id*. (quoting *Novell v. Migliaccio*, 309 Wis.2d 132, 749 N.W.2d 544, 553 (2008) (internal quotation marks and citation omitted)).

As defendants correctly point out, however, Wisconsin's federal courts have concluded that Wis. Stat. § 100.18 does not allow a plaintiff to assert a claim against a competitor, as

---

[2] On reply, defendants argue for the first time that the Lanham Act claim should be dismissed because Nicolet has suffered no damages or pecuniary loss. Dkt. 13, at 14. By failing to raise this argument until reply, defendants have waived it. *See Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005) (a party waives arguments raised for the first time on reply). Even if not waived, however, defendants' argument is premature in the absence of discovery and because it rests on facts that are in dispute, namely, that their allegedly-deceptive Google Ads ran for no more than 48 hours.

[3] Defendants' motion to dismiss Nicolet's state law trademark claim, which rests on the same arguments, *see* dkt. 6, at 28-29, will be denied for the same reasons.

Nicolet attempts to do here. *Grice Eng'g Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 922 (W.D. Wis. 2010) (Wis. Stat. § 100.18(1) "does not provide a cause of action for one vendor against a competitor for representations the competitor made to third parties."). *See also In re C2R Glob. Mfg., Inc.*, 617 B.R. 618, 624–25 (Bankr. E.D. Wis. 2020) ("Wisconsin courts have interpreted [§ 100.18] to require linkage between the plaintiff member of 'the public' who hears or receives the misrepresentation and who is induced to act on that statement, thereby suffering pecuniary loss."); *Willert v. Andre*, No. 17-CV-496-JDP, 2017 WL 5033658, at *5 (W.D. Wis. Oct. 31, 2017) (finding *Grice*'s reasoning persuasive, and finding that "the purpose of the DTPA and the Wisconsin Supreme Court's interpretation of the DTPA in *Novell* are persuasive indications that were this issue to come before the Wisconsin Supreme Court, it would hold that a business cannot state a claim for misrepresentations made by its competitor to a third party."); *Grasshopper Motorcycles, Ltd. v. Rivera*, No. 14-CV-320-SLC, 2015 WL 853564, at *7 (W.D. Wis. Feb. 26, 2015) (dismissing Wis. Stat. § 100.18(1) claim where plaintiff did not adduce facts showing that it was misled by defendant's alleged misrepresentations); *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air–Conditioning Engineers, Inc.*, 775 F. Supp. 2d 1082, 1090 (E.D. Wis. 2011) (same); *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F.Supp. 2d 659, 663 (W.D. Wis. 2009) (same); *Novell*, 2008 WI 44, ¶ 51, 309 Wis.2d 132, 749 N.W.2d 544 (construing statute to require proof by plaintiff that misrepresentation materially induced plaintiff to sustain a loss to state a claim under Wis. Stat. § 100.18).

Nicolet acknowledges that under this precedent, its Wis. Stat. § 100.18 claim is not viable. However, it cites two recent decisions from the Wisconsin Court of Appeals that it maintains call this precedent into question: *Lambrecht v. Remington*, 2020 WI App 18, 391 Wis. 2d 494, 942 N.W.2d 492 (per curiam) (unpublished), and *Pagoudis v. Keidl*, 2021 WI App 56, ¶ 30, 399 Wis. 2d 75, 97, 963 N.W.2d 803, 813–14. In *Lambrecht*, the court held that the plaintiff could recover damages for deceptive representations made to a third-party, finding that "[u]nder the plain language of the statute . . . there is no requirement that Lambrecht's untrue, deceptive or misleading representations had to be made to Remington to be actionable under § 100.18." *Id*. at ¶ 14. But as the bankruptcy court pointed out in *C2R*, Wisconsin courts would place "little to no weight" on *Lambrecht* because it is an unpublished, per curiam opinion. 617 B.R. at 623; *see* Wis. Stat. (Rule) § 809.23(3)(b)(unpublished, per curiam opinions cannot be cited as even persuasive authority).

*Pagoudis* is equally unhelpful to Nicolet. In that case, the Wisconsin Court of Appeals determined that a third party could proceed on an alleged misrepresentation claim in connection with a real estate transaction, where the alleged misrepresentation had been made to a related party with the same principal as the third party. 2021 WI App 56, ¶¶ 27-30. Unlike here, *Pagoudis* did not involve a claim of misrepresentation based on a competitor's allegedly misleading statements that did not induce any detrimental reliance by the plaintiff. What is more, the Wisconsin Supreme Court recently reversed the portion of the court of appeals' opinion that Nicolet relies on here. *Pagoudis v. Keidl*, 2023 WI 27, ¶¶ 38-42, 406 Wis. 2d 542, 565.

So, neither *Lambrecht* nor *Pagoudis* advances Nicolet's position. The prior decisions of this court remain persuasive, and Nicolet's brief fails to offer convincing reasons for this court to depart from them. Accordingly, Nicolet's Wis. Stat. § 100.18 claim will be dismissed.

## II.  MOTION TO TRANSFER

The federal change of venue statute, 28 U.S.C. § 1404(a), provides that a district court may transfer a civil action to another district court where the case could have been brought if transfer suits the convenience of the parties and witnesses and serves interest of justice. Both the Western District of Wisconsin and the District of Minnesota would be proper venues. Section 1404(a) permits a "flexible and individualized analysis" that is not confined by a narrow or required set of considerations. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The burden is on BGR and Saint Paul to show, by reference to specific circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).

In assessing the relative convenience of two venues, the court looks at each party's access to and distance from each forum, the location of material events, the availability and access to witnesses, and relative ease of access to sources of proof. *Research Automation*, 626 F.3d at 978. In general, a plaintiff's choice to file in its home forum is entitled to deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). But that deference is reduced when the material events did not occur in the plaintiff's chosen forum. *R.T.B. by & through Breault v. United States*, No. 19-cv-276-jdp, 2019 WL 6492826, at *1 (W.D. Wis. Dec. 3, 2019) (collecting cases).

14

Nicolet has its principal place of business in Hudson, Wisconsin, but it also has five offices in Minnesota, including one in Minneapolis. BGR's principal place of business is in River Falls, Wisconsin; it does not have any offices in Minnesota. Both firms, however, represent personal injury clients in both Wisconsin and Minnesota. Defendant Saint Paul has its principal place of business in St. Paul, Minnesota, and it identifies several witnesses, mainly its own employees and an independent contractor, who are located in Minnesota. So, the parties have connections to both this forum and the district of Minnesota.

Defendants argue that Nicolet's choice to file in its home forum should not be entitled to deference because the material events occurred in Minnesota. Defendants insist that the material event is Saint Paul's creation of the Google Ad, which took place at Saint Paul's office in St. Paul. Nicolet, on the other hand, says the material events are not limited to the digital execution of the Google Ads campaign but also include events that most likely occurred at BGR's Wisconsin office, including BGR's direction to Saint Paul, its review and potential approval of the ads, and any limitation placed by BGR on Saint Paul before the second campaign was launched in August 2022. Both sides' arguments are valid, but in reality the location of the material events is somewhat of a non-factor given that the bulk of the documentary evidence in this case is likely to exist in digital form. The court does not find this factor significant enough to overcome Nicolet's choice of forum.

As for the convenience of the parties, defendants argue that the United States District Courthouse for the District of Minnesota, located in St. Paul, is substantially closer than the Western District of Wisconsin courthouse in Madison to all three parties' principal and regular

places of business. Further, they argue, litigating this case in Minnesota would not pose a hardship for Nicolet, which has offices in Minnesota. Nicolet does not dispute these arguments or argue that it would be difficult to litigate in Minnesota, but says geographic concerns merit little weight in the digital age and the parties are unlikely to have to travel to the courthouse anyway except for trial. *See In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013) ("In our age of advanced electronic communication, including high-quality video-conferencing, changes of venue motivated by concerns with travel inconvenience should be fewer than in the past. Today documents can be scanned and transmitted by email; witnesses can be deposed, examined, and cross-examined remotely and their videotaped testimony shown at trial."). Although Nicolet's arguments are well-taken, the court finds this factor weighs slightly in favor of transfer.

As for the convenience of witnesses, this factor is "often deemed the most important factor in the transfer balance" and is "primarily concerned with the availability of non-party witnesses." *Wabash Valley Feed & Grain, LLC v. Hust*, 2011 WL 3902780, at *10 (S.D. Ind. 2011) (internal quotation omitted). Saint Paul says it has six known witnesses to provide testimony if this matter were to proceed to trial, five of whom reside in Minnesota. Dkt. 13, at 24; Dkt. 14-1. But it is unclear from Saint Paul's list how many of the five are non-party witnesses. Plainly, two are not: they are Saint Paul's owners. Two of the remaining three are identified as "consultants" and the third is an "independent contractor;" all are said to have information about BGR's account at Saint Paul and "information regarding Google Ads and its processes and functions." Dkt. 14-1. So far as it appears, these witnesses are employees and one independent contractor who worked directly for Saint Paul. It is unlikely that defendants

16

would have difficulty in securing the appearance of these employees at trial, wherever it might take place. *Id*. at *3 ("Courts ordinarily can assume that the parties will be sufficiently motivated to have their own employees or other allies appear for trial wherever it might take place."). So, this factor does not carry much weight in the transfer analysis.

All told, neither the convenience of the parties and witnesses nor the location of the relevant events weigh strongly in one direction or the other. But the remaining factor, the interests of justice, favors keeping the case in this court. The interests of justice analysis concerns the efficient administration of the court system. *Coffey*, 796 F.2d at 221. The factors the court considers are each court's familiarity with the relevant law, the relationship of each community to the dispute, each court's relative speed and docket congestion, and the desirability of resolving the dispute in one district over the other. *Id*.

Both Minnesota and Wisconsin have a relationship to this dispute and this court and the District of Minnesota are equally familiar with the Lanham Act. However, Nicolet has also asserted claims under Wisconsin law, with which this court is slightly more familiar. In addition, defendants concede that this this court has a shorter time to trial than Minnesota does. In fact, this court has already established the schedule in this case, with trial set for September 2024. According to Nicolet, the speed of this court's docket and its greater familiarity with Wisconsin law were factors in its decision to litigate in its home forum. Because defendants have not shown that it is clearly more convenient to litigate this case in Minnesota, this court must honor Nicolet's choice.

In sum, defendants have not produced sufficient evidence demonstrating the District of Minnesota would be a clearly more convenient forum. Accordingly, defendants' motion to transfer venue must be denied.

ORDER

Defendants' motion to dismiss, dkt. 5, is GRANTED IN PART and DENIED IN PART. Nicolet's claim under Wis. Stat. § 100.18 is DISMISSED. Defendants' motion is DENIED in all other respects, including its motion to transfer this case to the District of Minnesota.

Entered this 10th day of May, 2023.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge